IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**TORENO GRIFFIN**                                                                                          **PLAINTIFF**

**v.**                                                                        **CAUSE NO. 4:12-CV-148-CWR-FKB**

**CYNTHIA WELCH;**                                                                                         **DEFENDANTS**
**ALFA SPECIALTY INSURANCE COMPANY**
*d/b/a* **ALFA INSURANCE;**
**ALFA MUTUAL INSURANCE COMPANY**

## MEMORANDUM OPINION AND ORDER

Before the Court are the defendants' motion to dismiss and the plaintiff's motion for partial summary judgment. Docket Nos. 5, 13. The Court, after reviewing the motions, briefs of the parties, relevant law, and arguments of counsel, finds that the defendants' motion to dismiss should be granted, and that the plaintiff's motion for partial summary judgment should be denied.

**I.      Factual and Procedural History**

On May 31, 2011, Toreno Griffin suffered injuries in a car accident. He entered into settlement negotiations with the responsible driver's insurance company, Alfa Specialty Insurance Company ("Alfa"). During the processing of his claim, Griffin provided confidential medical information to Alfa's local agent, Cynthia Welch. The claim settled in July 2011.

Months after that settlement, while working on an unrelated claim, Welch disclosed Griffin's confidential medical information to a third party. The third party subsequently notified Griffin that his privacy had been compromised.

On September 10, 2012, Griffin brought this suit against Welch and Alfa. Docket No. 1. He claims that they are liable to him for the torts of invasion of privacy and outrageous conduct, and for violating the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* Docket No. 4. In court filings, Welch has admitted making the inappropriate disclosure. Docket No. 5-2, at 2.

The defendants filed a motion to dismiss on November 13, 2012, arguing that the FCRA does not apply to these facts. Docket No. 5. They ask that Griffin's state law claims proceed in state court. Griffin opposes dismissal and has moved for partial summary judgment on his FCRA count.

## II. Legal Standards

### A. Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of actions that fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts the plaintiff's factual allegations as true and makes reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," but need not have "detailed factual allegations." *Id.* (quotation marks and citation omitted). The plaintiff's claims must also have facial plausibility, which means there is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The Court need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (citation omitted).

### B. Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record that shows a factual dispute. Fed. R. Civ. P. 56(c)(1). The Court views the evidence and draws reasonable inferences in the light most favorable to the non-movant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011).

## III. Discussion

### A. Motion to Dismiss

The first section of the FCRA provides the following background for the law:

(a) Accuracy and fairness of credit reporting

The Congress makes the following findings:

> (1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.
>
> (2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and

>general reputation of consumers.
>
>(3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.
>
>(4) There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.
>
>(b) Reasonable procedures
>
>It is the purpose of this subchapter to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter.

15 U.S.C. § 1681(a)-(b).

"Although the FCRA seems to focus on imposing requirements on consumer reporting agencies, the statute imposes duties on others, as well, including, but not limited to, procurers of investigative consumer reports; users taking adverse actions based on consumer's credit information; and furnishers of information to consumer reporting agencies." *Taylor v. Chase Auto Fin. Corp.*, 850 F. Supp. 2d 637, 642 (N.D. Miss. 2012) (citations omitted); *see Hovater v. Equifax, Inc.*, 823 F.2d 413, 417 (11th Cir. 1987) ("[T]he Act protects the consumer generally by requiring . . . that the confidentiality of the information be maintained by limiting the parties with access to [consumer] reports to those with a legitimate interest in obtaining the information.").

This case addresses whether an insurance agent's disclosure of a third-party claimant's medical information, without a legitimate reason to do so, is actionable under the FCRA. The defendants argue that the FCRA's scope does not extend to this factual scenario, while Griffin argues that he has a viable claim under the FCRA.

The analysis starts with the plain language of the FCRA, as it is well-established that courts "must enforce plain and unambiguous statutory language according to its terms." *Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149, 2156 (2010) (citations omitted). "Needless to say, plain statutory language is the most instructive and reliable indicator of Congressional intent." *Martinez v. Mukasey*, 519 F.3d 532, 543 (5th Cir. 2008) (citation omitted).

Two sections of the FCRA are relevant to Griffin's claims: § 1681a and § 1681b. Section 1681a defines terms used in the FCRA, including the term "consumer report," and § 1681b "adds to section 1681a(d)'s definition of a consumer report, as well as delineates the permissible uses for those 'communications of information' already falling within the definition of a 'consumer report.'" *Yang v. Gov't Employees Ins. Co.*, 146 F.3d 1320, 1324 (11th Cir. 1998). "[C]ourts have recognized the preeminence of § 1681a and conformed the breadth of § 1681b to its bounds. . . . [C]onforming § 1681b to 1681a preserves the integrity of both sections, while promoting the underlying purpose of the entire subchapter." *Hovater*, 823 F.2d at 419 (quotation marks and citations omitted).

The specific provision on which Griffin relies is § 1681b(g)(4). As *Hovater*, 823 F.2d at 419, suggests, to properly interpret § 1681b(g)(4), the Court must construe the provision "in harmony" with § 1681a, as well as the statute as a whole. *Martinez*, 519 F.3d at 541 (stating that the court looks "to the statutory language as a whole, construing each section in harmony with every other part or section") (citation omitted). Thus, the Court first looks to the "Definitions" section of the statute. *See* 15 U.S.C. § 1681a.

> Section 1681a(d)(1) provides that, in general, a "consumer report" is
>
> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for–
>
> (A) credit or insurance to be used primarily for personal, family, or household purposes;
>
> (B) employment purposes; or
>
> (C) any other purpose authorized under section 1681b of this title.

*Id.* § 1681a(d)(1). A "consumer reporting agency" is "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." *Id.* § 1681a(f).

Some communication of information satisfies the general definition of "consumer report" as provided in § 1681a(d)(1), but nevertheless may not be considered a consumer report by virtue of § 1681a(d)(2), which is the "Exclusions" provision of the "consumer report" definition. *See id.* § 1681a(d)(2). The exclusions to the term "consumer report" include, for example, communication of information "among persons related by common ownership or affiliated by corporate control," if the consumer is informed that the information may be communicated to affiliates and if the consumer is given an opportunity to opt out. *Id.* § 1681a(d)(2)(A)(iii). However, § 1681a(d)(3), which is labeled "Restriction on sharing of medical information," specifies, in pertinent part, that medical information disclosed between affiliates is not excluded from being considered a consumer report, unless the medical information is "disclosed as provided in section 1681b(g)(3)."[1] *Id.* § 1681a(d)(3)(A).

Next, the Court turns to § 1681b(g), the FCRA section on which Griffin relies. Section 1681b(g)(4) (referred to herein as "paragraph (4)") states, "Any person that receives medical information pursuant to paragraph (1) or (3) shall not disclose such information to any other person, except as necessary to carry out the purpose for which the information was initially disclosed, or as otherwise permitted by statute, regulation, or order." *Id.* § 1681b(g)(4). Welch's disclosure of Griffin's medical information was indisputably unnecessary "to carry out the purpose for which the information was initially disclosed," *id.*, and was not otherwise permissible by law; there was no reason for Welch to share Griffin's medical history with a stranger at all, much less months after Griffin's claim had been settled. Thus, if the defendants received Griffin's medical information pursuant to § 1681b(g)(1) (referred to herein as "paragraph (1)") or § 1681b(g)(3) (referred to herein as "paragraph (3)"), they violated the FCRA.

Paragraph (1) states that a consumer reporting agency shall not furnish "a consumer report that contains medical information" for "employment purposes, or in connection with a credit or insurance transaction" except as provided for in the statute. *Id.* § 1681b(g)(1). Griffin acknowledges that the defendants are not consumer reporting agencies, and that his medical

---

[1] As discussed *infra*, § 1681b(g)(3) limits the scope of § 1681a(d)(3).

information does not constitute a consumer report. *See* Docket No. 8, at 1-2. Therefore, paragraph (1) does not subject the defendants to paragraph (4)'s restrictions on redisclosure of medical information.

Paragraph (3), which is labeled "Actions authorized by Federal law, insurance activities and regulatory determinations," provides that some medical information should not be considered a consumer report when disclosed for certain purposes:

> Section 1681a(d)(3) [regarding restriction on sharing of medical information] of this title shall not be construed so as to treat information or any communication of information as a consumer report if the information or communication is disclosed . . . (A) in connection with the business of insurance . . . , including the activities described in section 18B of the model Privacy of Consumer Financial and Health Information Regulation issued by the National Association of Insurance Commissioners . . . . [or] (C) as otherwise determined to be necessary and appropriate by regulation or order . . . .

15 U.S.C. § 1681b(g)(3).

The language of paragraph (3) indicates that the paragraph simply clarifies the scope of § 1681a(d)(3). *See* 15 U.S.C. § 1681b(g)(3) (stating that "[s]ection 1681a(d)(3) of this title shall not be construed . . . ."). Thus, the "information" or "communication of information" mentioned in paragraph (3) is the same type of "information" or "communication of information" discussed in § 1681a(d)(3), a subsection of the definition of "consumer report."

Section 1681a(d)(3) pertains to information that is exchanged between affiliates and which satisfies the general definition of "consumer report." *See id.* § 1681a(d)(3)(A) (stating that medical information shared between affiliates is not excluded from being considered a consumer report except as provided by § 1681b(g)(3)). Thus, paragraph (3) provides, in relevant part, that medical information that is exchanged between affiliates and would qualify as a consumer report but for an exception is not considered a consumer report when that information is disclosed "in connection with the business of insurance," or in the other ways listed in paragraph (3). *See id.* §§ 1681a(d)(3)(A), 1681b(g)(3). Paragraph (3), therefore, is designed to ensure that under certain circumstances, sharing of medical information among affiliates is not hindered by the FCRA's limitations on disclosure of consumer reports. *See id.* § 1681b(g)(3).

Paragraph (4), however, provides that even though medical information received pursuant

to paragraph (3) is not considered a consumer report, redisclosing the medical information is permitted only for legitimate reasons. *See id.* § 1681b(g)(4).

Griffin's FCRA claim relies on the assumption that paragraphs (3) and (4) prohibit *any* medical information disclosed for insurance purposes from being redisclosed for illegitimate purposes. Griffin has not identified any authority that supports his assertion.[2] As explained above, when read as a whole, the statutory provisions contradict his interpretation. In order for a person to have received medical information pursuant to paragraph (3), the medical information must meet the general definition of "consumer report," and it must have been shared between affiliates.[3] *See id.* § 1681a(d)(3)(A) (providing that medical information shared between affiliated corporations or related entities is not excluded from being deemed a consumer report); *id.* § 1681b(g)(3) (restricting the scope of § 1681a(d)(3)).

The medical information that Griffin communicated to Welch does not qualify as a communication of "information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal

---

[2] Although Griffin relies extensively on *United States v. Bormes*, 133 S. Ct. 12, 16-17 (2012), the issue in *Bormes* is sovereign immunity. *See id.* at 15-20. *Bormes* does not reference § 1681b(g)(4) at all. *See Bormes*, 133 S. Ct. at 15-20.

Griffin also quotes an excerpt from frequently asked questions included in a 2001 National Association of Insurance Commissioners' guideline, which states the following:

> Question 27: I was in a car accident and my claim was paid by the other driver's insurer. That company now has information about me that I do not want disclosed. Can I do anything about that?
>
> Response: . . . HEALTH INFORMATION. The company may not disclose your health information to any party without your affirmative consent (except as permitted under one or more of the exceptions set out in the regulation).

Docket No. 27, at 13. There is no indication that this excerpt is an interpretation of § 1681b(g)(4) of the FCRA.

[3] During oral argument on the motion to dismiss, Griffin's counsel argued extensively that Welch received Griffin's information while she was engaged in claims adjustment and management, which is an insurance activity that is included in § 18B of the Model Privacy of Consumer Financial and Health Information Regulation and an identical provision of a Mississippi insurance regulation. *See* Model Privacy of Consumer Fin. & Health Info. Reg. § 18B; Miss. Ins. Dep't Reg. No. 2001-1 § 17B. According to Griffin's counsel, Welch, therefore, received the medical information pursuant to § 1681b(g)(3)(A) and § 1681b(g)(3)(C). However, that argument impermissibly ignores the context of subsections (3)(A) and (3)(C). *See King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) ("[S]tatutory language, plain or not, depends on context.").

characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for" credit, insurance, employment, or other purposes listed in the statute. *Id.* § 1681a(d)(1). The medical information does not, therefore, satisfy the general definition of "consumer report." Furthermore, Griffin communicated the medical information to Alfa through Welch. Griffin is obviously not an affiliate of Alfa or Welch. Therefore, Welch did not receive Griffin's medical information pursuant to paragraph (3).

Because Welch did not receive Griffin's medical information pursuant to paragraph (1) or paragraph (3), § 1681b(g)(4) is inapplicable to the present case, and Griffin's FCRA claim is due to be dismissed.

### B.     Motion for Partial Summary Judgment

Because the defendants' motion to dismiss Griffin's FCRA claim is due to be granted, Griffin's motion for partial summary judgment is moot.

### IV.    Conclusion

For the foregoing reasons, the defendants' motion to dismiss is granted, and Griffin's motion for partial summary judgment is denied as moot. Griffin's FCRA claim is dismissed with prejudice. Because no federal causes of action remain, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Griffin's state law claims.

**SO ORDERED**, this the 26th day of September, 2013.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE